**Case No. 23-12708-E**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

KATHERINE M. RUDD, et. al.
*Plaintiffs-Appellants,*

v.

BRANCH BANKING & TRUST COMPANY,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Alabama

*District Court Case No. 2:13-cv-02016-SGC*

---

**BRIEF OF APPELLANTS KATHERINE M. RUDD
AND TIFFANY RUDD ATKINSON**

---

**John Parker Yates**
**Kristopher O. Anderson**
Yates Anderson
2920 Highland Ave. S., Ste 290B
Birmingham, AL 35205
(205) 705-3144
parker@yatesanderson.com
kris@yatesanderson.com

**Jeffrey P. Mauro**
Jeffrey P. Mauro, LLC
2100-B SouthBridge Parkway
Suite 380
Birmingham, AL 35209
(205) 994-6384
jpm@jeffmaurollc.com

*Attorneys for Appellants Katherine M. Rudd and Tiffany Rudd Atkinson*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellants, Katherine M. Rudd and Tiffany Rudd Atkinson, hereby respectfully submit this Certificate of Interested Persons and Corporate Disclosure Statement in accordance with 11th Cir. R. 26.1-2, and list the following entities/persons as parties in the above-styled proceeding:

1. Anderson, Kristopher O. – Attorney for Appellants;

2. Atkinson, Tiffany Rudd – Appellant;

3. Branch Banking & Trust Company – Appellee;

4. Childs, Larry B. – Attorney for Appellee;

5. Holland & Knight, LLP – Firm representing Appellee;

6. Hon. Staci G. Cornelius – Magistrate Judge in District Court;

7. Jeffrey P. Mauro, LLC – Firm representing Appellants;

8. Mauro, Jeffrey P. – Attorney for Appellants;

9. Yates, John Parker – Attorney for Appellants;

10. Yates Anderson, LLC – Firm representing Appellants.

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

COMES NOW, Katherine M. Rudd and Tiffany Rudd Atkinson, and in accordance with the Order of this Court and Federal Rules of Appellate Procedure, make the following disclosure concerning parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but no trust beneficiaries), affiliates, or similar reportable entities:

Appellants have no reportable entities.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request that the Court hear oral argument in this case which implicates important questions regarding the correct application of the doctrine of collateral estoppel and the protection of Plaintiffs' rights under the law and warrants oral argument to ensure their full and fair resolution.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ...................................... i

CORPORATE DISCLOSURE STATEMENT ......................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................. iii

TABLE OF CONTENTS .................................................. iv

TABLE OF CITATIONS ......................................................... vii

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUES ............................................................ 2

STATEMENT OF THE CASE ................................................................ 4

I.     Introduction................................................................... 4

II.    Statement of Facts ............................................................ 9

       A. Creation of the Trusts.................................................. 10

       B. SouthTrust's Removal as Trustee Between
          June 2001 and January 2002 .................................... 12

       C. Arlington Trust Company's Role – 2002-2013 ........................... 12

       D. BB&T Becomes Successor Trustee
          of Shares Trust and 1989 Trust.................................. 14

       E. Values of Shares Trusts and 1989 Trust................................... 16

       F. BB&T's Knowledge Regarding the Shares & 1989 Trusts ........ 17

       G. BB&T's 30(b)(6) Testimony ....................................... 18

iv

H. Plaintiffs' Lack of Knowledge and Information Regarding the Shares Trust and 1989 Trust ............................ 20

I. No Annual Audits Were Performed ............................................. 21

J. Discretionary Distributions to Joy Were Always Granted ........ 22

K. April 30, 2011 Release and Termination of the Shares Trust ... 23

III.    Course of Proceedings and Disposition Below ............................. 24

A. The Instant Federal Action ........................................................ 24

B. The State Court Action .............................................................. 28

IV.    Standard of Review ....................................................................... 31

SUMMARY OF THE ARGUMENT ...................................................... 31

ARGUMENT ........................................................................................ 38

I.    The District Court erred in finding that Plaintiffs' claims regarding the Shares Trust were barred by the doctrine of collateral estoppel based on prior orders entered in the state court action ................................................................................ 39

A. The District Court erred in concluding that Judge Vance's December 31, 2018 Order was a "final judgment on the merits" with respect to the termination of the Shares Trust ............................................................................... 43

B. The District Court contravened well-established law by failing to consider Plaintiffs' pro tanto settlement agreement with Arlington which expressly preserved all claims against BB&T ................................................................. 46

v

C. The District Court erred in concluding that Judge Vance's finding that the Shares Trust terminated in April 2011 was "necessary" to the prior judgement where the parties had already settled and dismissed all such claims and the March 7, 2017 Order <u>offered multiple grounds</u> for granting partial summary judgment .................... 54

II.    The District Court erred in finding that the statute of limitations was not tolled with respect to the Shares Trust ...................................................................................... 60

III.    The District Court erred in misconstruing Judge Ott's Order and Limiting the scope of claims remaining with respect to the 1989 Trust ............................................. 66

CONCLUSION ........................................................ 71

CERTIFICATE OF COMPLIANCE ....................................... 72

CERTIFICATE OF SERVICE ............................................. 72

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Arizona v. California*, 530 U.S. 392 (2000) .............................. 34,47,49,55

*Balbirer v. Austin*, 790 F.2d 1524 (11th Cir. 1986)............................ 49,50

*Belcher v. Queen*, 39 So.3d 1023 (Ala. 2009)........................................... 39

*Bobby v. Bies*, 556 U.S. 825 (2009)......................................................... 55

*Bonner v. Lyons, Pipe & Cook, P.C.*,
  26 So.3d 1115 (Ala. 2009) .................................................................. 40

*Center for Biological Diversity v. Hamilton*,
  453 F.3d 1331 (11th Cir. 2006) .......................................................... 31

*Citibank, N.A. v. Data Lease Financial Corp.*,
  904 F.2d 1498 (11th Cir. 1990) .......................................................... 49

*Community. State Bank v. Strong*,
  651 F.3d 1241 (11th Cir. 2011) .......................................................... 40

*Consumer Fin. Protection Bureau v. Ocwen Fin. Corp.*,
  30 F.4th 1079 (11th Cir. 2022)............................................................ 50

*CSX Transportation, Inc. v. Gen. Mills, Inc.*,
  846 F.3d 1333 (11th Cir.  2017) .......................................................... 31

*Dupree v. PeoplesSouth Bank*, 308 So.3d 484 (Ala. 2020) ................ 43,45

*Ex parte BAC Home Loan Servicing, LP*,
  59 So.3d 31 (Ala. 2013) ...................................................................... 58,59

*Ex parte Discount Foods, Inc.*, 789 So.2d 842 (Ala. 2001) ...................... 39

*Ex parte Endo Health Sols. Inc.,* 354 So.3d 488 (Ala. 2021) ................. 58

*Ex parte Skelton*, 275 So.3d 144 (Ala. 2018) ........................................... 58

*First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*,
  825 F.2d 1475 (11th Cir. 1987) ....................................................... 41,46

*Griffin v. Verizon Commc'ns Inc.*,
  746 F. App'x 873, 875 (11th Cir. 2018) ............................................. 29

*Home Indem. Co. v. Anders*, 459 So.2d 836 (Ala. 1984) ........................ 45

*In re Optical Techs., Inc.*, 246 F.3d 1332 (11th Cir. 2001)...................... 31

*Lee L. Saad Constr. Co. v. DPF Architects, P.C.*,
  851 So.2d 507 (Ala. 2002) .................................................................. 41

*Lloyd Nolan Foundation, Inc. v. HealthSouth Corp.*,
  979 So.2d 784 (Ala. 2007) .................................................................. 41

*Malfatti v. Bank of America, N.A.*, 99 So.3d 1221 (Ala. 2012) .............. 45

*Mars Hill Baptist Church of Anniston v. Mars Hill Missionary*
  *Baptist Church*, 761 So.2d 975 (Ala. 1999) ...................................... 45

*Martin v. Cash Express, Inc.*, 60 So.3d 236 (Ala. 2010) ........................ 38

*McNeely v. Spry Funeral Home of Athens, Inc.*,
  724 So.2d 534 (Ala. Civ. App. 1998) ................................................. 50

*Norfolk Southern Corp. v. Chevron U.S.A, Inc.*,
  371 F.3d 1285 (11th Cir. 2004)................................................. 48,49,50

*Norvell v. Norvell*, 275 So.3d 497 (Ala. 2018) ........................................ 59

*Penley v. Eslinger*, 605 F.3d 843 (11th Cir. 2010).....................................31

*Pinigis v. Regions Bank*, 942 So.2d 841 (Ala. 2006) ...............................42

*Ruple v. Hartford Life & Accident Ins. Co.*,
    340 Fed. Appx 604 (11th Cir. 2009)......................................................48

*Stewart v. Brinley*, 902 So.2d 1 (Ala. 2004) ...........................................41

*Tampa Bay Water v. HDR Engineering, Inc.*,
    731 F.3d 1171 (11th Cir. 2013) ...........................................................52

*Wyeth, Inc. v. Blue Cross and Blue Shield of Alabama*,
    42 So.3d 1216 (Ala. 2010) ...................................................................59

## Statutes and Rules

28 U.S.C. § 1332(a)(1)................................................................................1

28 U.S.C. § 1291 .........................................................................................1

Ala. Code § 19-3B-101 *et seq.* .............................................................6,7

Ala. Code § 19-3B-808 ..............................................................................8

Ala. Code § 19-3B-811 ..............................................................................8

Ala. Code § 19-3B-812 ..........................................................................8,26

Ala. Code § 19-3B-813 ..........................................................................8,19

Alabama Rules of Civil Procedure 12(b)(6)..............................................24

Alabama Rules of Civil Procedure 12(e) ..............................................24,26

Alabama Rules of Civil Procedure 12(f)....................................................26

Alabama Rules of Civil Procedure 41(b)...................................................26

## Secondary Sources

18 Wright, Miller & Cooper, Federal Practice and Procedure § 4421 at 543 (2d ed. 2002) ....................................................................55

50 C.J.S. Judgment § 729 (1997) ..........................................................46

Restatement (Second) of Judgments, § 27 (1982)............... 34,48,52,55,56

## STATEMENT OF JURISDICTION

Jurisdiction for this action was proper in the United States District Court for the Northern District of Alabama under 28 U.S.C. § 1332(a)(1) based on diversity jurisdiction. The District Court entered final judgment on all claims between and among the parties on July 20, 2023. On August 18, 2023, Plaintiffs filed a timely notice of appeal, properly invoking this Court's jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the District Court erred in concluding that Plaintiffs' claims were barred by doctrine of collateral estoppel.

(a)    Whether the District Court erred in finding that the state court's December 31, 2018 Order was a final judgment on the merits.

(b)    Whether the District Court erred in failing to consider and give effect to the terms of the Plaintiffs' pro tanto settlement with Arlington Trust Company which expressly reserved all claims against Branch Banking & Trust Company.

(c)    Whether the District Court erred in concluding that the state court's interlocutory finding that the Shares Trust had terminated was "necessary" to the final judgment where the order set forth multiple grounds for the entry of summary judgment such that no singular finding was necessary, and where the final order merely dismissed all

2

claims against Arlington Trust Company pursuant to the parties' stipulation of dismissal.

2.    Whether the District Court erred in concluding that Plaintiffs' claims were barred by the statute of limitations and were not tolled because there was no reporting obligation owed to Plaintiffs.

3.    Whether the District Court erred by misconstruing the scope of Plaintiffs' claims with respect to the 1989 Trust as set forth in Judge Ott's August 8, 2016 Order.

## STATEMENT OF THE CASE

## I.    INTRODUCTION

Notwithstanding recurring and obvious breaches of fiduciary duty by BB&T and the predecessor trustees and custodian, the district court granted BB&T's motion for summary judgment in its entirety by revisiting and vacating substantive rulings of law previously entered by Judge Ott[1] on BB&T's prior dispositive motions. The district court committed several errors in reaching its conclusions. First, it incorrectly determined that the Plaintiffs were collaterally estopped from asserting claims based on a prior interlocutory ruling in the state court action. This was despite the fact that Plaintiffs had already settled all their claims before a final order was issued. Because the settlement was based upon an agreement between the parties, there was no final judgment on the merits of the case in state court action. Additionally, no specific ruling was deemed "necessary" to issue the final order. Second, the district court

_____

[1] Magistrate Judge John E. Ott (hereinafter "Judge Ott") presided over this action from its inception in 2013 until his retirement in June 2020, at which time the case was reassigned to Magistrate Judge Staci G. Cornelius.

erroneously concluded that the relevant statute of limitations was not tolled for Plaintiffs' claims related to the Shares Trust despite the Plaintiffs having no knowledge or information about the existence and administration of the Trust. Lastly, the district court incorrectly found that the trustees' failure to carry out and distribute required annual audits caused no damage to the Plaintiffs concerning the 1989 Trust and dismissed all claims related to the 1989 Trust on that basis. All of these errors, alone and in the aggregate, warrant reversal. If the district court's ruling is allowed to stand, Plaintiffs will be deprived of their right to a full and fair adjudication of their claims against BB&T based on unmistakable trust mismanagement and malfeasance.

This action arises from a series of trusts established by J.W. Goodwin in the 1980's, which were designed to benefit his daughter (Joy Adams) and grandchildren for years to come. Plaintiffs, who are the grandchildren of J.W. Goodwin, brought this action based on BB&T's gross dereliction of its fiduciary duties as successor trustee of the Shares Trust and 1989 Trust (beginning on August 14, 2009), following pervasive trust malfeasance by predecessor trustees Wells Fargo, Colonial Bank,

5

co-trustee Joy Adams, and custodian, Arlington Trust Company ("Arlington"). The record reflects that a pattern of greed, self-dealing and conflicted-interest transactions pervaded the administration of the trusts and the trustees and custodian approved, acquiesced, and/or ratified recurring distributions and other transactions without regard for the interests of the remainder beneficiaries. Such trust malfeasance was obvious as more than $10 million (or virtually all) of the Trusts' corpus had been depleted by 2009, and BB&T readily acknowledged that the prior administration of the Trusts had been mismanaged, lacked adequate documentation and was "a mess."

The undisputed record reflects that the predecessor trustees and BB&T knew that fiduciary obligations owed under Alabama's Uniform Trust Code, codified at Ala. Code § 19-3B-101 *et seq*., had not been followed and that the terms the Shares and 1989 Trust instruments had been violated.  Not only did such fiduciaries know that virtually all of the Shares Trust and 1989 Trust corpus had been depleted through distributions to the income beneficiary/co-trustee Joy Adams but they also failed to: (1) perform annual audits and distribute said audits to the

Plaintiffs as mandated by the Trust instruments; (2) provide Plaintiffs notice or other information as beneficiaries of the Trusts; and (3) give consideration to Joy Adams' (income beneficiary) other income/assets before making discretionary distributions. Such knowledge by BB&T, as the successor trustee, warranted and required further inquiry and investigation into the prior administration of the Trusts to determine where the trust corpus had gone. In contravention of its fiduciary obligation under Alabama's Uniform Trust Code (AUTC)[2], codified at Ala. Code § 19-3B-101 *et seq.*, to redress breaches of trust by any current or predecessor trustees, as well as its own trust policies, BB&T failed to request relevant information or hold any fiduciary to account for such pervasive wrongdoing and was recklessly indifferent to the interests of Plaintiffs as remainder beneficiaries in the face of obvious trust malfeasance and mismanagement.

BB&T defended the complete abdication of its fiduciary obligations in the face of serious malfeasance by maintaining that much of the

---

[2] The AUTC was enacted to provide safeguards to protect trust beneficiaries from malfeasance committed at the hands of trustees. None of these safeguards were followed by the trustees, including BB&T.

wrongdoing occurred prior to its service as trustee in August 2009 and therefore it had no responsibility to redress such malfeasance. However, this contention ignores its duties under the AUTC as recognized in Judge Ott's August 8, 2016 Order stating that BB&T may be liable for prior breaches of Joy Adams and Wells Fargo, who served as trustees of the Shares and 1989 Trusts, as a trustee may be liable for failing to exercise reasonable care to prevent a serious breach of trust by another trustee or to compel a trustee to redress such a breach. (Doc. 46 at 44, 47); *see* Ala. Code § 19-3B-812.

Plaintiffs allege that BB&T breached its fiduciary duties as successor trustee by failing to collect trust property (Ala. Code §19-3B-808); failing to enforce all claims (§19-3B-811); failing to redress any breaches of trust (§19-3B-812); and failing to keep the qualified beneficiaries reasonably informed about the administration of these Trusts. [3] (§19-3B-813). **Tellingly, the pervasive depletion of trust assets was recognized in the state court action. The Honorable**

---

[3] BB&T's expert acknowledged that Plaintiffs were qualified beneficiaries of the 1989 Trust and were entitled to notice of the Trust, their interests therein, and information regarding its administration.

8

**Robert S. Vance (hereinafter "Judge Vance"), who presided over the relevant state court action, determined that predecessor trustee Wells Fargo "was complicit in a pattern of abuse and neglect that allowed co-defendant Joy Adams to plunder the various trusts that her father had established" and "ignored its oversight responsibilities in what can easily be regarded as a wanton dereliction of its fiduciary responsibilities."** (*See* Judge Vance's December 31, 2018 Order, Doc. 179-6)(emphasis added)

## II.    STATEMENT OF FACTS

1.      Katherine M. Rudd ("Kate") is Joy Adams's daughter, born in December 1983. (Kate Rudd Dep., Doc. 179-34 at 11)  On August 30, 2013, she became co-trustee of the Grandchildren's Trust. (*Id.* at 14) That same day (August 30, 2013), she became co-trustee of the 1989 Trust. (*Id.* at 60-61)

2.      Tiffany Rudd Atkinson ("Tiffany") is Adams's daughter, born in February 1978. (Tiffany Atkinson Dep., Doc. 179-36 at 12-13)  Tiffany became co-trustee of the Grandchildren's Trust (succeeding Arlington Trust Company) on December 18, 2012. (*Id.* at 37)

9

### A.    Creation of the Trusts

3.    In 1986, J.W. and Virginia Goodwin ("Goodwins"), Plaintiffs' grandparents, created the Grandchildren's Trust for the benefit of their grandchildren, Tiffany and Kate, and named their mother, Joy Adams, and SouthTrust Bank as co-trustees. (Adams Dep., Doc 179-38 at 35-36)

4.    In 1987, the Goodwins created the J.W. Goodwin and Virginia Goodwin Trust for Joy Goodwin Rudd dated January 2, 1987 (hereinafter "Shares Trust") and named Joy and SouthTrust Bank as co-trustees. (See Shares Trust, Doc. 179-1) The Shares Trust consisted of two shares: Share I and Share II. Joy was the income beneficiary with a right to distributions of principal for health, education, maintenance and support (HEMS). Ex. 1, Article 2(b)) The Grandchildren's Trust was the remainder beneficiary of the Share I Trust. (Shannon Elliott Dep., Doc. 179-31 at 39, 47) Upon termination of Joy's interest, the remainder of Share II was to be transferred by Joy using her testamentary power of appointment; and if Joy failed to exercise that power of appointment, the remainder of Share II would go to the Grandchildren's Trust, or if it no longer existed, to Joy's then-living descendants. (Doc.179-1, Article 2(i)).

5.      In 1989, Joy established the Joy Goodwin Adams Irrevocable Trust dated July 19, 1989 (hereinafter "the 1989 Trust") and named Mr. Goodwin and SouthTrust as co-trustees.[4] (1989 Trust Agreement, Doc.179-2 at 1). Joy later succeeded her father as co-trustee in 1991. Joy was the income beneficiary (current distributee) with a right to distributions of principal for health, education, maintenance and support ("HEMS"). (Doc. 179-2, Art. 2(b)) At Joy's death, the remainder of the Trust was to transfer to Joy's lineal descendants according to her testamentary power of appointment; and if Joy failed to exercise her power of appointment, the remainder of the 1989 Trust was to go to each living child of Joy's per stirpes. (*Id.* at Art. 4(a))

6.      In addition to Joy Adams's respective interests in the Share I, Share II, and 1989 Trusts, Joy received significant assets from her parents from 1989 through 1994 in the form of outright gifts in excess of $3 million. (Adams Dep., Doc. 179-39 at 69-70).

---

[4] While Joy was named the grantor, she testified that this Trust was established and funded by her father. (Adams dep. p. 127)

11

**B.    SouthTrust's Removal as Trustee Between June 2021 and January 2002**

7.    On June 26, 2001, Adams removed SouthTrust as trustee of the 1989 Trust and appointed Colonial Bank as trustee. (Change of Trustee, Doc. 167-3).

8.    On January 17, 2002, Adams removed SouthTrust as trustee of the Shares Trust and appointed Colonial Bank as trustee.

**C.    Arlington Trust Company's Role 2002-2013**

9.    In 2002, Colonial Bank contracted with Arlington to serve as custodian of the Shares Trusts and the 1989 Trust, and was thereby entrusted to provide administrative and fiduciary services.[5] (Susan Moon Dep., Doc. 179-40 at 137-139; Elliotte Dep., Doc. 179-31 at 55, 57)

10.    As custodian, Arlington managed all trust assets and administered the day-to-day operations of the Shares Trust and 1989 Trust beginning in 2002. (See 2/12/2010 Email from Lynda Lewis, Doc. 179-19)

---

[5] In addition to Arlington's role as custodian of the Shares and 1989 Trusts, Arlington served with Joy Adams as co-trustees of the Grandchildren's Trust during the period from 2002 through 2012.

11.    Susan Moon was Arlington's trust officer responsible for administering the Grandchildren's Trust, Shares Trust, and 1989 Trust. (Moon Dep., Doc. 179-40 at 113; 140; Elliotte Dep., Doc. 179-31 at 12, 60).

12.    Moon's testimony aptly reflects Arlington's failure to comply with its fiduciary responsibilities with respect to the Shares and 1989 Trusts:

> - Ms. Moon did not know if Plaintiffs were beneficiaries of the 1989 Trust or Shares Trust (Moon Dep., Doc. 179-40 at 54-55)

> - Ms. Moon never considered, or knew, what assets Joy Adams had, or sources of income she was receiving, when determining whether to provide her with discretionary distributions of trust principal. (Id. at 154-55)

> - Ms. Moon admitted that she does not recall ever refusing a discretionary distribution request by Joy Adams with respect to any of the trusts; (Id. at 77)

> - Ms. Moon did not recall providing any information to Plaintiffs regarding the Shares Trust or 1989 Trust. (Id. at 93-94)

13

**D.    BB&T Becomes Successor Trustee of Shares Trust and 1989 Trust**

13.    In August 2009, upon acquisition of certain assets of Colonial Bank, BB&T became the successor trustee of the Shares and 1989 Trusts. (Melissa Brown Dep., Doc. 179-41 at 51, 58)

14.    Upon acceptance of these Trusts,[6]  BB&T recognized that the Trusts lacked adequate documentation as internal communication among senior management stated:

> - It doesn't look like Arlington did a much better job of documentation than Colonial" - "I think all sale people who complain about required documentation should be forced to work their way through one of these messes"[7]
>
> - "Obviously, there are so many issues with these accounts ..."[8]

15.    On October 29, 2010, BB&T retained Arlington to continue its administrative and fiduciary functions as Custodian over the Shares and 1989 Trusts pursuant to a Memorandum of Understanding, wherein BB&T acknowledged "as successor in interest to certain assets of Colonial

---

[6] Despite becoming trustee in August 2009, BB&T did not acknowledge its role as trustee of the Shares Trust and 1989 Trust until approximately July 2010. (Ex. 41 at 17-18, 59)

[7] See 7/23/2010 Email from Brent Peters, Ex. 13 (emphasis added)

[8] See 2/8/2011 Email from Jerry Lane, Ex. 8.

Bank" that "it serves as trustee of" the Shares and 1989 Trust." (See Memorandum of Understanding, Doc. 179-5)

16.    BB&T's Trust Specialist, Lem Stabler, tasked with responsibility over these Trusts beginning in September 2010, also noted problems associated with the Trusts, stating in a February 2011 email, "we need to do a lot of Q&A with Joy re[garding] the history of the three current trusts, . ." (See 2/10/2011 Email from Lem Stabler, Doc. 179- 7)

17.    Despite Stabler's statement, BB&T never met with nor spoke to its co- trustee, Joy Adams, regarding these Trusts. (Brown Dep., Doc. 179-41 at 225, 237-38)

18.    Stabler later referenced the issues with these Trusts, stating "**I'll be glad to see this one in the rear view mirror**" and "**[t]his whole thing is like gum on my shoe; I would like to put the whole thing behind me**"[9] (Doc. 179-9; Doc. 179-14)(emphasis added)

---

[9] See 7/11 /11 Email from Lem Stabler, Doc. 179-10; and 2/22/12 Email from Lem Stabler BB&T, Doc. 179-14

### E.    Values of Shares Trusts and 1989 Trust

19.    Upon creation of the 1989 Trust, the Trust Estate held assets valued at $8.67 million. (Doc. 179-2, Schedule A) In January 1998, the 1989 Trust held assets of $4.689 million. (See 1/1/98 Account Statement, Doc. 179-15) By 2011, the 1989 Trust held assets of $179, plus a 13% interest in Goodwin Capital Partners. (See 2010 YTD Account Statement for 1989 Trust, Doc. 179-18)

20.    Upon creation of the Shares Trust in 1987, the trust estate held securities valued at $1.27 million (divided among Share I and II). (Doc. 179-1, Sched. A)  In January 2001, Share I held assets of $904,000,[10] and also held a one-third interest in Adams Timber LLC, while the Share II Trust held assets of $1.2 million, plus held a one-third interest in Adams Timber LLC. By April 2011, Share I held assets of $251, plus its 1/3 interest in Adams Timber LLC., and Share II held assets of less than $500, and also held a 1/3 interest in Adams Timber LLC. (4/30/2011 Share I Account Statement, Doc. 179-49; 4/30/2011 Share II Account Statement, Doc. 179-50)

---

[10] See 1/31/2002 Share I Trust Account Statement, Ex. 16

### F.    BB&T Becomes Successor Trustee of Shares Trust and 1989 Trust

21.    BB&T knew that the Shares Trusts and 1989 Trust named Joy Adams as income beneficiary with HEMS support, and that it had remainder beneficiaries, yet disputed that Plaintiffs held remainder interests. (Brown Dep., Doc. 179-41 at 196, 384, 388)

22.    BB&T knew the 1989 Trust was funded with assets valued at approximately $8.6 million. (Id. at 149-50)

23.    BB&T recognized a lack of documentation in the administration of the Shares and 1989 Trusts by the predecessor trustees and Arlington, such that BB&T's management called the prior trust administration a "mess[].["11][12] (See 7/23/2010 Email from Brent Peters, Doc. 179-13)

24.    BB&T knew that by 2009, more than $10 million in Trust corpus of these 3 Trusts was gone, with virtually no liquid assets

---

[11] See 1/31/2001 Share II Trust Account Statement, Ex. 17

[12] In August 2008, Share II received an additional $326,000 in assets from life insurance proceeds received on Virginia Goodwin's life which was thereafter distributed to Joy. (Ex. 22)

remaining in the trusts, despite the interests of the remainder beneficiaries. (Brown Dep., Doc. 179-41 at 149-50)

25.    BB&T knew that annual audits of the Shares and 1989 Trusts had not been performed or provided to Tiffany and Kate as mandated by the Trust instruments. (*Id.* at 113-114)

26.    BB&T knew that Tiffany and Kate were beneficiaries (and possibly qualified beneficiaries) of these Trusts yet failed to provide any notice or information to them regarding the Shares and 1989 Trusts' existence or its administration. (*Id.* at 223; Elliotte Dep., Doc. 179-33 at 250, 252)

**G.    BB&T's 30(b)(6) Testimony**

27.    BB&T failed to request or review any information pertaining to the prior administration of the Shares and 1989 Trust from 2002-2009, while Arlington served as custodian, as it deemed such information irrelevant. (Brown Dep., Doc. 179-41 at 127, 130, 381)

28.    BB&T acknowledged that no annual audits were performed on the Shares and 1989 Trusts, or distributed to Tiffany and Kate, but stated that this trust term was merely a "suggestion." (*Id.* at 249, 260,

263)

29.    BB&T never met nor spoke with its co-trustee Joy Adams regarding the Trusts. [13]  (*Id.* at 225)

30.    BB&T stated that consideration of Joy's other income and assets when evaluating her requests for distributions of trust principal was also a "suggestion" and not required (*Id.* at 374-75) and therefore had no information regarding Joy's other sources of income, assets and loans. (*Id.* at 215, 372)

31.    BB&T stated it had no reason to question why the 1989 Trust's value had plummeted from inception to 2009, had no responsibility to determine what happened to all of the trust assets, (*Id.* at 284) and the only thing that mattered to BB&T were the current assets held in trust when it became trustee. (*Id.* at 401-02).

32.    BB&T never inquired regarding the status of the Fort Walton Square property which was identified on Schedule A of the Trust as the

---

[13] Notice of a trust's termination is required to all qualified beneficiaries under Ala. Code §19-3B-414. Similarly, a final accounting of a trust is required to be provided to the qualified beneficiaries under § 19-3B-813(d).

19

largest asset of the 1989 Trust. (*Id*. at 267-68, 279)

**H.    Plaintiffs' Lack of Knowledge and Information Regarding the Shares Trust and 1989 Trust**

33.    Arlington Trust officer Susan Moon stated that no account statements regarding the Shares Trusts or 1989 Trusts were provided to Tiffany and Kate, and no discussions were had with them regarding these Trusts. (Moon Dep., Doc. 179-40 at 93-94; Elliotte Dep., Doc. 179-31, at 187)

34.    Joy never notified Tiffany or Kate of any discretionary distributions she received from the Shares Trusts or the 1989 Trust. (See Joy's Response to Plaintiffs' Requests for Admission, Doc. 182-1, at Nos. 16, 17)

35.    Joy never had any conversations with Tiffany and Kate regarding the Shares Trust or 1989 Trust (Adams Dep., Doc. 179-38 at 249-50)

36.    BB&T never had any conversation or contact with Tiffany or Kate. (Brown Dep., Doc. 179-41 at 223)

## I.    No Annual Audits Were Performed

37.    The 1989 Trust required that an annual audit be performed by a certified public accountant, with the results to be provided to the Trust beneficiaries, (Doc. 179-2, Art. 7(D)) yet BB&T and Arlington acknowledged that no annual audits were performed on the Shares or 1989 Trusts. (Elliotte Dep., Doc. 179-31 at 68; Brown Dep., Doc. 179-41 at 113-114)

38.    The Shares Trusts required that annual audits be performed by a certified public accountant, with the results to be provided to the Trust beneficiaries. (Doc. 179-1, Art. 5(C)) BB&T and Arlington acknowledge that no annual audits were performed on the Shares or 1989 Trusts. (Elliotte Dep., Doc. 179-31 at 68; Brown Dep., Doc. 179-42 at 113-114) Arlington's Chief Fiduciary Officer stated that the failure to perform an annual audit violated the Trust instruments. (Elliotte Dep., Doc. 179-33 at 271-72)

39.    Joy did not know that the Shares and 1989 Trusts contained a provision requiring the performance of annual audits, (Adams Dep., Doc. 179-39 at 41) or that annual audits were to be furnished to Tiffany

21

and Kate. (Adams Dep., Doc. 179-38 at 104, 153)

40.    Joy relied on the corporate trustees to ensure compliance with the trust instruments. (Adams Dep., Doc. 179-at 19)

## J.    Discretionary Distributions to Joy were Always Granted

41.    While Joy was the income beneficiary of the Shares and 1989 Trusts with HEMS support, she received recurring discretionary distributions of principal which depleted the corpus of the Share I and II Trusts and 1989 Trust. (Elliotte Dep., Doc. 179-32 at 169-70)

42.    Arlington's trust officer and CFO stated that Joy's requests for discretionary distributions were always granted. (Moon Dep., Doc. 179-40 at 77; Elliotte Dep., Doc. 179-31 at 92-93)

43.    Joy stated that Arlington always accommodated her way (Adams Dep., Doc. 179-38 at 25-26), and that no trustee or custodian ever told her no. (Id. at 26-27)

44.    Arlington acknowledged its duty to consider all sources of income and assets available to Joy with respect to requests for discretionary distributions, yet admitted that it could have done a better job in considering such other sources. (Elliotte Dep., Doc. 179-30 at 87)

**K.    April 30, 2011 Release and Termination of the Shares Trust**

45.    On April 30, 2011, BB&T, Arlington and Joy executed a Release Termination and Indemnification Agreement purporting to terminate the Share I and Share II Trusts pursuant to Ala. Code § 19-3B-414 (See Release, Discharge and Indemnification, Doc. 179-11) without any notification to Tiffany and Kate.10 (Brown Dep., Doc. 179-41 at 408)

46.    Tiffany and Kate were not informed nor consented to this termination and did not agree to release BB&T and/or Arlington regarding the administration of these Trusts. (*Id*. at 418-420)

47.    Notwithstanding this purported termination, a Non-Judicial Settlement Agreement executed in conjunction with the 2013 Settlement removed BB&T as trustee of the Shares and 1989 Trusts and Regions Bank was appointed as successor trustee. (NonJudicial Settlement Agreement, Doc. 179-50)

## III.   COURSE OF PROCEEDINGS AND DISPOSITION BELOW

### A.   The Instant Federal Action

48.   Plaintiffs initiated the instant action by filing the complaint in state court on September 27, 2013, asserting claims both individually and in their capacity as co-trustees of the Grandchildren's Trust against BB&T and Wells Fargo. (Doc. 1-1).

49.   On November 1, 2013, BB&T and Wells Fargo removed the action, invoking district court's diversity jurisdiction. (Doc. 1). On November 8, 2013, BB&T filed motions for a dismissal under Rule 12(b)(6) or a more definite statement under Rule 12(e). (Doc. 5) Wells Fargo filed a motion asking this court to dismiss or stay this case. (Doc. 9).

50.   On November 14, 2014, Judge Ott granted Wells Fargo's motion to dismiss based upon the doctrine of forum non conveniens. Judge Ott further granted BB&T's motion to dismiss on various claims and granted BB&T's motion for a more definite statement. (Doc. 27)

51.   On December 4, 2014, Plaintiffs filed their Amended Complaint, the operative complaint. (Doc. 31) Plaintiffs, both

24

individually and as co-trustees of the 1989 Trust and Shares Trust, alleged multiple breaches of fiduciary duty by BB&T, a corporate co-trustee. (*Id.*) Plaintiffs alleged that BB&T failed uphold the higher standard of care, skill, and caution expected from a "professional" trustee; that it improperly delegated its duties to custodian Arlington and failed to monitor Arlington's performance; that BB&T neglected to participate and monitor the activities of the FLP, thereby affecting trust assets and beneficiaries that it failed to properly administer the trusts, including the failure to conduct annual audits, and that BB&T and Arlington concealed their breaches by not disclosing material information. Plaintiffs specifically pled that they were unaware of the breaches until March 2012 and have suffered ongoing injuries as a result. (Doc. 1-1 at 9-10)

52.    On December 18, 2014, BB&T again sought dismissal of Plaintiff's Complaint. (Doc. 35) On August 8, 2016, Judge Ott granted in part and denied in part BB&T's motion. [14] (Doc. 46)  Judge Ott identified

---

[14] Specifically, the motion was granted to dismiss various claims, including those: (1) brought by Plaintiffs individually as beneficiaries of the Goodwin Family Trusts; (2) on behalf of the Marital, Grandchildren's,

the remaining viable claims against BB&T for breach of fiduciary duty based on: (1) the trustees' failure to conduct required annual audits and provide annual accountings to Plaintiffs; (2) excess monthly distributions to Joy from the Shares Trust; (3) improper payments to Joy from the Shares Trust's principal; and (4) a $1.9 million loan to Joy that went unpaid, implicating the Shares Trust. The order was issued on August 8, 2016. (Doc. 46 at 51).

53.    In his August 8, 2016 Order (Doc. 46), Judge Ott expressly held that:

(1)    "BB&T's motion is due to be denied to the extent it seeks dismissal of all claims alleging that BB&T breached its own fiduciary duty under Ala. Code § 19-3B-812 to recover trust property or redress breaches of trust by a former trustee that would have occurred prior to August 14, 2009" (*Id*. at 43);

(2)    "that Plaintiffs' allegations that Joy and Wells Fargo committed breaches of trust in their administration of the Shares Trust and the 1989 Trust may for the basis of claims against BB&T" (*Id*. at 44);

---

and other specified trusts; and (3) relating to fiduciary breaches by former trustees or regarding the governance of the FLP. (*Id*.) The motion was denied in other respects, including BB&T's request for dismissal with prejudice and without leave to replead under Rule 12(e) or Rule 41(b), and its alternative request to "strike" certain allegations or order a more definite statement under Rule 12(e) or 12(f). (*Id*.)

(3)    "that Plaintiffs have plead sufficient detail to claims based on their theory that BB&T engaged in fraudulent suppression or concealment that constituted a breach of its fiduciary duty and tolled the statute of limitations on Plaintiffs' claims for other non-fraud-based breaches of fiduciary duty. Specifically, Plaintiffs have alleged that, under the terms of both the 19899 Trust and the Shares Trust agreements, BB&T had the obligation … to conduct annual audits of those Trusts and that BB&T was under a duty to deliver a copy of the associated annual audit reports to each beneficiary over age 18 …. Such failure to furnish audit reports supposedly kept Plaintiffs in the dark about their status as beneficiaries and about other alleged breaches of fiduciary duty by BB&T. That in turn allegedly prevented Plaintiffs from filing suit or otherwise taking steps to protect their interests until after March 2012, when they claim they first learned of their beneficial interests in the trusts."  (*Id*. at 45-46)

54.    On June 21, 2017, BB&T filed a third motion to dismiss (Doc. 66) seeking dismissal of claims asserted against it as co-trustee of the Shares Trust, which Judge Ott ultimately denied in a Memorandum Opinion and Order dated October 11, 2018.  (Doc. 90)

55.    On March 2, 2021, BB&T filed two motions for summary judgment and related briefs seeking the dismissal of remaining claims asserted against it in its capacity as predecessor trustee of the Shares Trusts and the 1989 Trust. (Docs 163-166) Plaintiffs filed opposition thereto on March 23, 2021 (Docs. 180-181) and BB&T filed replies on April 6, 2021 (Docs. 187-188).

27

56.    On March 22, 2023, the district court entered a Memorandum Opinion and Order (Doc. 204), granting summary judgment in favor of BB&T and dismissing the remaining claims asserted by Plaintiffs.

**B.    The State Court Action**

57.    Prior to and during the pendency of this action, Plaintiffs litigated claims in their capacities as beneficiaries of the Shares Trust and the 1989 Trust in the Circuit Court of Jefferson County, Alabama (*Kathrine M. Rudd et al v. Joy G. Adams et al,* 01-CV-2012-900915) before Judge Vance. On March 7, 2017, Judge Vance entered an interlocutory order on Arlington's motion for partial summary judgment finding, *inter alia*, that Arlington owed no fiduciary duties as custodian of the Shares and 1989 Trusts such that Plaintiffs' breach of fiduciary duty claims were due to be dismissed and that the Shares Trust had terminated in April 2011.  (Doc. 167-17)

58.    After entry of the March 7, 2017 interlocutory order, Plaintiffs and Arlington executed a settlement agreement resolving all claims. (Doc. 169, Ex. N., Filed under seal) On March 22, 2018, in accordance with the settlement, the parties filed a Joint Stipulation of Pro Tanto

Dismissal with Prejudice stating that "Plaintiffs' claims against Arlington have been settled and compromised, on a pro tanto basis, and … are due to be dismissed with prejudice." (*See* Doc. 1150, *Katherine M. Rudd et al v. Joy Rudd et al*, 01-CV-2012-900915, Doc. 1150 (2018))[15]

59.   Moreover, the parties' 2018 settlement agreement clearly evidence an intent to settle and dismiss all claims between Plaintiffs and Arlington, and reserve all pending claims against BB&T, stating in pertinent part as follows:

> "WHEREAS, Plaintiffs and Arlington have agreed to fully, finally and forever settle and resolve the Lawsuit and **all claims** that were or could have been alleged by either of them against the other, on a pro tanto basis." (Doc. 169, Ex. N, filed under seal]
> …
> "Plaintiffs, on a pro tanto basis only, release, remise and forever discharge Arlington … from **any and all claims** and damages of every kind and nature which Plaintiffs have or ever had, known or unknown ,,, .including but not limited to **any and all claims** relating to the events in the Lawsuit…**and any and all claims concerning or relating in any way to the Grandchildren's Trust, the Share I Trust, the Share II Trust** … *Id.*
> …
> This release is pro tanto only, and Plaintiffs reserve and preserve **all claims** against parties other than the Released Parties,

---

[15] "Courts may take judicial notice of record documents from other proceedings." *Griffin v. Verizon Commc'ns Inc.*, 746 F. App'x 873, 875 (11th Cir. 2018)

including but not limited to Wells Fargo Bank, N.A., (Wells Fargo) and BB&T Corporation and Branch Banking and Trust Company (collectively "BB&T)"

…

"… Plaintiffs stipulate, represent and warrant that (1) their claims and damages against BB&T in the action styled Katherine M. Rudd et al., v. Branch Banking and Trust Company, Case No. 2:13-cv-02016-JEO, in the United States District Court for the Northern Division of Alabama, arise solely from BB&T's alleged acts and omissions as trustees of the Shares Trust and 1989 Trust, which included an obligation to administer and manage the trusts, as well as an obligation to review the prior trust activities and take reasonable steps to redress breaches of trust and recover trust assets, if any, which had been improperly distributed, invaded, or mismanaged by any co-trustee or custodian…"

(*Id.*)(emphasis added).

60.    On December 31, 2018, Judge Vance entered an order titled "Final Order." With respect to Arlington, Judge Vance stated: "Pursuant to the parties' stipulation, all remaining claims against Defendant Arlington Trust Company are hereby dismissed with prejudice." (Doc. 179-6)

30

## IV.    STANDARD OF REVIEW

This Court reviews de novo a district court's grant of summary judgment. *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and this Court must affirm the district court's grant of summary judgment. *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001). Whether collateral estoppel is available is a question of law that the Court reviews de novo. *CSX Transportation, Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336-37 (11th Cir. 2017). Finally, the Court reviews a district court's application of statutes of limitation de novo. *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006) Appellees adopt the Standard of Review in Appellants' Opening Brief. (Doc. 11, pp. 20-21).

## SUMMARY OF THE ARGUMENT

The District Court's grant of summary judgment on Plaintiffs' claims against BB&T was error for several reasons.

The district court erred by sua sponte raising the affirmative defense of collateral estoppel, even though BB&T failed to plead it in their answer or prove its requisite elements. This led the court to incorrectly grant summary judgment in BB&T's favor, based on a flawed belief that a prior state court interlocutory ruling had preclusive effects on Plaintiff's claims. First, the District Court erred in concluding that Judge Vance's December 31, 2018 Order was a "<u>final judgment on the merits</u>" with respect to the termination of the Shares Trust. While the district court noted that the state court's March 7, 2017 order --finding that the Shares Trust had terminated in April 2011 -- was a non-final, interlocutory ruling, the court held that it merged with the final order to constitute a final adjudication on the merits despite the parties' intervening settlement agreement and stipulated dismissal of all claims with prejudice. Accordingly, that state court's December 31, 2018 Order dismissing Plaintiffs' claims against Arlington pursuant to the parties' stipulation was not a final judgment on the merits as it did not decide the respective rights and liability of the parties.

32

Second, the district court ran afoul of well-established Supreme Court and Eleventh Circuit jurisprudence in failing to consider the express terms and effect of the Plaintiffs and Arlington's settlement agreement. A court's analysis under these circumstances requires a focus on the settlement agreement between the parties. (*Id.* at 1289) Herein, the parties' settlement agreement did not manifest any intention for the settlement to be conclusive with respect to any issue and its terms clearly evidenced an intent to preserve Plaintiffs' pending claims against BB&T. (Doc. 169, Ex. N) Employing traditional principles of contract law, it is clear that there was no intention by the parties for the Settlement Agreement to operate as a final adjudication of any particular issue or to bar Plaintiffs' claims against BB&T. Accordingly, the district court's failure to give effect to the parties' settlement agreement was error.

Third, the district court erred deeming the state court's interlocutory finding -- that the Shares Trust had terminated in April 2011-- was "necessary" for the final judgment. "It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, *and the*

*determination is essential to the judgment.*"  *Arizona v. California*, 530 U.S. 392, 414 (2000)(emphasis added); Restatement (Second) of Judgments, § 27  and cmt. h (1982)("[n]ecessarily determined" means "essential to the judgment;" "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action … is not precluded")  Here, any finding that the Shares Trust terminated in 2011 was not "necessary" for the entry of the judgment where Plaintiffs and Arlington had previously resolved and stipulated to the dismissal of "all claims."  Moreover, the state court's entry of partial summary judgment with respect to the Shares Trust was based on <u>multiple grounds</u> such that none were "necessary" to the judgment.  Because each finding would independently support the entry of summary judgment, the judgment did not hinge on any particular determination and thus was not eligible to be accorded preclusive effect.

The district court further erred in concluding that the two-year statute of limitations barred Plaintiffs' claims (which were brought in September 2013). This error stems from the district court's incorrect reliance on the state court finding and its failure to recognize the ample

34

evidence warranting the tolling of such claims. In so finding, the district court overlooked the unequivocal evidence that Plaintiffs, who were adult beneficiaries, had no knowledge of both the Shares Trust and the 1989 Trust. This lack of awareness arose because BB&T and the predecessor trustees or custodian failed to conduct and distribute annual audits required by the Trust instruments, thereby undermining Plaintiffs ability to protect their interests. Notwithstanding Plaintiffs lack of knowledge regarding such Trusts, the district court concluded that the statute of limitations was not tolled **"[b]ecause Plaintiffs have not identified a duty of disclosure owed to them, nothing was fraudulently concealed from them, and there is no basis for tolling the statute of limitations**." (Doc. 204 at 44-45) This conclusion not only contradicts Judge Ott's prior determination that Plaintiffs had pled sufficient detail that BB&T's fraudulent concealment constituted a breach of fiduciary duty and tolled the statute of limitation, but more importantly ignores the express terms of the Shares Trust which required the trustees to provide notice and information regarding the Trust to Plaintiffs through the provision of annual audits which were to

35

be distributed to <u>every beneficiary over 18 years</u>. (See Doc. 179-1 at 11-12, Shares Trust, Article 5C)

Finally, the district court erred in granting summary judgment regarding Plaintiffs' claims with respect to the 1989 Trust. Specifically, the court wrongly narrowed the scope of Plaintiffs claims <u>to BB&T's failure to perform and provide such audit reports from 2009 forward</u>. This interpretation contradicts Judge Ott's August 8, 2016 Order, upon which the district court relied, which acknowledged the viability of claims "based on the alleged failure of the **<u>trustees</u>**" – not merely BB&T – "to conduct required annual audits," which would have alerted Plaintiffs earlier mismanagement and malfeasance. In fact, Judge Ott denied BB&T's motion to dismiss all claims based on BB&T's failure to redress breaches of trust by a former trustee "<u>that would have occurred prior to August 14, 2009</u>." (Doc. 46 at.43) (emphasis added) Judge Ott expressly held that <u>"Plaintiffs' allegations that Joy and Wells Fargo committed breaches of trust in their administration of the Shares Trust and the 1989 Trust may form the basis of a clam against BB&T" (Doc. 46 at 44) and that "a successor trustee may be liable for a failure to act reasonably in</u>

seeking to recover trust property or to redress a breach of trust by a predecessor trustee that is known to the successor." (*Id.*) The District Court erred in dismissing the viability of breaches of duty and resulting damages from the trustees' failure to conduct and distribute annual audits prior to 2009. This oversight warrants reversal.

_____

**ARGUMENT**

By Order dated March 22, 2023, the district court committed multiple errors in granting summary judgment for BB&T by concluding that prior state court rulings had preclusive effect on Plaintiffs' claims and that the statute of limitations on Plaintiffs' claims were not tolled. Further, the district court misconstrued and failed to give proper effect to a prior Order setting forth the scope of Plaintiffs' claims regarding the 1989 Trust. Plaintiffs submit that such findings were not only erroneous based on the record and applicable law, but the district court further failed to adhere to prior substantive rulings of law made by Magistrate Judge John E. Ott ("Judge Ott"), who presided over the action for seven years, which were not clearly erroneous, and warrant reversal of the district court's judgment.[16]

---

[16] In *Martin v. Cash Express, Inc.*, 60 So.3d 236 (Ala. 2010), the Court explained the law of the case doctrine and a court's duty to adhere to prior rulings:

> "the law of the case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the

38

**I.** **The District Court erred in finding that Plaintiffs' claims regarding the Shares Trust were barred by the doctrine of collateral estoppel based on prior orders entered in the state court action.**

The district court's grant of summary judgment in favor of BB&T was predicated on several critical errors of law that warrant reversal. Chief among these errors was the district court's mistaken reliance on collateral estoppel to dismiss Plaintiffs' claims, despite the absence of the doctrine's requisite elements.

First, the district court erred in giving preclusive effect to a March 7, 2017 interlocutory order granting partial summary judgment in favor of Arlington. This was error because there was no final adjudication on the merits determining that the Shares Trust had terminated in 2011.

Second, the District Court overlooked controlling law from this Circuit and the United States Supreme Court when it failed to consider

---

possibility of repeatedly litigating an issue already decided. *Ex parte Discount Foods, Inc*., 789 So.2d 842, 846, n.4 (Ala. 2001) The law of the case doctrine may be disregarded if the court is convinced its prior decision was clearly erroneous or there has been an intervening change in the law ..”

*Id.* at 249 (quoting *Belcher v. Queen*, 39 So.3d 1023, 1038 (Ala. 2009))

the implications of the parties' settlement agreement and the stipulated dismissal of all claims. The court's failure to do so runs afoul of established jurisprudence requiring a thorough examination of such factors when assessing the preclusive effect of prior judgments.

Third, the District Court erred by failing to recognize that the state court's interlocutory finding on the termination of the Shares Trust was not "necessary" for its subsequent entry of a final judgment.

Alabama law governs the Court's collateral estoppel analysis. *See Community State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011)("In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the state's law of preclusion.") Collateral estoppel, also known as issue preclusion, "is an equitable defense that bars a party from relitigating an issue that has been resolved in an earlier case." *Bonner v. Lyons, Pipe & Cook, P.C.*, 26 So.3d 1115, 1121 (Ala. 2009). Under Alabama law, collateral estoppel has four elements: (1) the issue in the prior case is identical to the issue in the present case; (2) a court of competent jurisdiction actually litigated the issue in the prior action; (3) the

resolution of that issue was necessary to the prior judgment; and (4) the same parties or their respective privies are involved in the two actions. *See Lloyd Nolan Foundation, Inc. v. HealthSouth Corp.*, 979 So.2d 784, 795-96 (Ala. 2007); *Stewart v. Brinley*, 902 So.2d 1, 9 (Ala. 2004). Additionally, a ruling on the issue generally must be embodied in a final judgment on the merits before the ruling will be given preclusive effect. *See First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1480 (11th Cir. 1987)("Under Alabama law, res judicata and collateral estoppel principles do not apply until there is a final judgment rendered on the merits of the case.") The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication." *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So.2d 507, 520 (Ala. 2002). If all four elements are present, the prior judgment is conclusive as to those issues actually determined in the prior suit.

Despite BB&T's burden of establishing that all four elements of collateral estoppel were satisfied, BB&T failed to advance any argument addressing and establishing the preclusive effect of any prior order.

41

Instead, BB&T's motion for summary judgment summarily states in a 3-sentence footnote that Plaintiffs were estopped from re-litigating the termination of the Shares Trust with little explanation. (Doc. 166 at 20, n.12) Notwithstanding Judge Ott's prior determination rejecting any preclusive effect of Judge Vance's prior Order, and BB&T's failure to satisfy its burden, the district court supplied its own analysis and reasoning regarding the preclusive effect of Judge Vance's prior Order.[17]

---

[17] The district court refused to follow Judge Ott's October 11, 2018 determination that Judge Vance's grant of partial summary judgment in favor of Arlington did not operate to bar Plaintiffs' claims under the Erie Doctrine because Vance's Order was interlocutory and not a final order, and further that BB&T neither pled in its Answer nor argued in connection with its motion to dismiss that Judge Vance's ruling was binding under the doctrine of collateral estoppel . (Doc. 90, p.21, n.7)  At no time did BB&T plead collateral estoppel as a defense  in its answer to Plaintiffs' complaint or amended complaint.  "Once an answer is filed, if an affirmative defense is not pleaded, it is waived." *Pinigis v. Regions Bank*, 942 So.2d 841,846 (Ala. 2006). Because collateral estoppel is an affirmative defense, BB&T waived the defense by failing to plead it.

A.   The District Court erred in concluding that Judge Vance's December 31, 2018 Order was a "<u>final judgment on the merits</u>" with respect to the termination of the Shares Trust.

As noted above, collateral estoppel is inapplicable unless there is a final judgment rendered on the merits. A "judgment on the merits" requires an order which reflects the respective rights and liability of the parties. See *Dupree v. PeoplesSouth Bank*, 308 So.3d 484, 489 (Ala. 2020). The district court incorrectly held that Judge Vance's March 7, 2017 interlocutory order – which found, *inter alia*, that the Shares Trust had terminated in April 2011 -- merged with the final order to constitute a final adjudication on the merits. This conclusion is erroneous for the critical reason that there was no final adjudication on the merits within the state court action that declared the respective rights and liability of the parties involved. Judge Vance's order was clearly a non-final, interlocutory order as the first sentence states "[p]ending is a motion for <u>partial</u> summary judgment" and the Order further holds that Plaintiffs' claims against Arlington with respect to the Grandchildren's trust remained viable. (Doc. 983, State court action) Importantly, all claims

43

against Arlington were subsequently settled by the parties, who then mutually agreed to dismiss all such claims with prejudice. On March 22, 2018, in accordance with the settlement agreement, the parties filed a Joint Stipulation of Pro Tanto Dismissal with Prejudice stating that "Plaintiffs' claims against Arlington have been settled and compromised, on a pro tanto basis, and … are due to be dismissed with prejudice." (*See* Doc. 1150, *Katherine M. Rudd et al v. Joy Rudd et al*, 01-CV-2012-900915, Doc. 1150 (2018))

Notwithstanding the parties' Settlement Agreement and Joint Stipulation of Dismissal, the district court held that Judge Vance's December 31, 2018 Final Order (Doc. 1207) constituted a final adjudication on the merits, concluding that "[w]hen Judge Vance entered the final order in the state case on December 31, 2018, his March 7, 2017 order granting partial summary judgment in Arlington's favor merged with that order and itself became final for purposes of appeal." (Doc. 204 at 37-38) This finding fails to account for or give effect to the parties' prior settlement and voluntary dismissal of all claims against Arlington from which no right of appeal was available. Such error is further apparent

44

as the December 31, 2018 Final Order acknowledges the parties'
stipulated dismissal of claims based on the parties' pro tanto settlement
agreement and, therefore, confirms that no issues were actually litigated,
determined and embodied in a final judgment on the merits. *See Malfatti
v. Bank of America, N.A.*, 99 So.3d 1221, 1226 (Ala. 2012)

Based on the stipulated dismissal of all claims, no adverse ruling
was entered with respect to Plaintiffs' claims against Arlington and
therefore no appeal was available to challenge the prior interlocutory
order. "Generally, an appeal can only be brought by a party or its
personal representative … from an adverse ruling contained in a final
judgment." *Home Indem. Co. v. Anders*, 459 So.2d 836, 842 (Ala. 1984).
A "judgment on the merits" requires an order which reflects the
respective rights and liability of the parties. *Dupree v. PeoplesSouth
Bank*, 308 So.3d at 489. In *Dupree*, the Court reversed the trial court's
finding of res judicata by concluding that there was no final judgment on
the merits, stating "[a] judgment is on the merits when it amounts to a
decision as to the respective rights and liability of the parties …" (citing
*Mars Hill Baptist Church of Anniston v. Mars Hill Missionary Baptist*

45

*Church*, 761 So.2d 975, 978 (Ala. 1999)(quoting 50 C.J.S. Judgment § 729 (1997)).

Here, Judge Vance's December 31, 2018 Order dismissing all claims against Arlington pursuant to the parties' stipulation did not decide the respective rights and liability of the parties and, therefore, was not a "final judgment on the merits." See *First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1480 (11th Cir. 1987)("Under Alabama law, res judicata and collateral estoppel principles do not apply until there is a final judgment rendered on the merits of the case.") Judge Vance's Final Order neither references nor incorporates the prior interlocutory finding regarding the termination of the Shares Trust in 2011. As a result, it cannot reasonably be argued that this interlocutory ruling finally adjudicated the issue and was embodied in a final judgment on the merits.

**B.    The District Court contravened well-established law by failing to consider Plaintiffs' pro tanto settlement agreement with Arlington which expressly preserved all claims against BB&T.**

46

The district court further erred by failing to consider the express terms and effects of the Plaintiffs and Arlington's settlement agreement reached in the state court action which contravenes well-established jurisprudence from both the United States Supreme Court and the Eleventh Circuit, and represents another reason the decision should be reversed.

In *Arizona v. California,* 530 U.S. 392, 414 (2000), the Supreme Court held that a settlement ordinarily occasions no issue preclusion unless it is clear the parties intend their agreement to have such effect. *Id*. at 414. "In most circumstances it is recognized that consent judgments ordinarily are intended to preclude any further litigation on *the claim* presented but are not intended to preclude further litigation on any of *the issues* presented. *Id*.  The Supreme Court further explained:

> It is the general rule that issue preclusion attaches only "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." "In the case of a judgment entered by confession, consent or default, none of the issues is actually litigated. Therefore, the rule of this section [describing issue preclusion's domain] does not apply with respect to any issue in subsequent action."

*Id.* (quoting Restatement (Second) of Judgments § 27, p. 250 and cmt. e at 257 (1982).

The Eleventh Circuit has likewise stated that where parties consent to a voluntary dismissal of a complaint with prejudice, "a somewhat modified form of res judicata applies to the written settlement agreement upon which such dismissal is predicated." *Norfolk Southern Corp. v. Chevron U.S.A, Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004). A court's analysis under these circumstances requires a focus on the settlement agreement between the parties. *Id.* at 1289. ("In determining the res judicata effect of an order of dismissal based upon a settlement agreement, [courts] should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself.") In fact, the scope of the preclusive effect of a voluntary dismissal based on a settlement "should not be determined by the claims specified in the original complaint, but instead by the terms of the settlement agreement, as interpreted according to traditional principles of contract law." *Id.* Accordingly, a court "should look to the agreement itself to determine what claims the parties intended to be finally and forever

48

barred by the dismissal." *Ruple v. Hartford Life & Accident Ins. Co.*, 340 Fed. Appx 604, 610 (11th Cir. 2009).

The Eleventh Circuit has further stated that "a consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue." *Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir. 1986).  Generally, matters dismissed on the basis of a settlement agreement do not support collateral estoppel because the purpose of settlement is to avoid actual litigation of an issue. *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) ("Settlements ordinarily occasion no issue preclusion … unless it is clear … that the parties intend their agreement to have such an effect."); *Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1504 (11th Cir. 1990)(citation omitted). In light of the foregoing authorities, the district court was required to review the terms of the settlement agreement to ascertain what was intended by the parties. See *Norfolk Southern Corp. v. Chevron U.S.A., Inc.,* 371 F.3d 1285, 1288 (11th Cir.

2004)*(*The expressed intent of the parties is the determining factor in whether a consent-based judgment is given collateral estoppel effect*); see Balbirer v. Austin,* 790 F.2d 1524, 1528; *see also Consumer Fin. Protection Bureau v. Ocwen Fin. Corp.,* 30 F.4[th] 1079 (11th Cir. 2022)*(f*ollowing *Norfolk*, the Court stated that a settlement agreement's preclusive scope only extends as far as that agreement")("The agreement becomes the court's judgment").

Herein, Plaintiffs' claims against Arlington in the state court action were settled by agreement and, therefore, no issues were litigated and conclusively decided. *See McNeely v. Spry Funeral Home of Athens, Inc.*, 724 So.2d 534, 538 (Ala. Civ. App. 1998)(Court held that because prior action was settled by agreement, "no issues were litigated or decided…") Further, the parties' settlement agreement does not manifest any intention for the settlement to be conclusive with respect to any issue, including whether the Shares Trusts had terminated. Instead, the record clearly reflects that Plaintiffs and Arlington settled and thereafter jointly dismissed with prejudice all claims asserted against Arlington pursuant to the settlement agreement, with the express intent of reserving and

50

preserving Plaintiffs' pending claims against BB&T.  Moreover, the

terms of the parties' 2018 settlement agreement clearly evidence such an

intent, stating in pertinent part as follows:

> "WHEREAS, Plaintiffs and Arlington have agreed to fully, finally and forever settle and resolve the Lawsuit and **all claims** that were or could have been alleged by either of them against the other, on a pro tanto basis." (Doc.  Exhibit N under Seal]
> …
> "Plaintiffs, on a pro tanto basis only, release, remise and forever discharge Arlington … from **any and all claims** and damages of every kind and nature which Plaintiffs have or ever had, known or unknown ,,, .including but not limited to any and all claims relating to the events in the Lawsuit…and any and all claims concerning or relating in any way to the Grandchildren's Trust, the Share I Trust, the Share II Trust … Id.
> …
>
> This release is pro tanto only, and Plaintiffs reserve and preserve **all claims** against parties other than the Released Parties, including but not limited to Wells Fargo Bank, N.A., (Wells Fargo) and BB&T Corporation and Branch Banking and Trust Company (collectively "BB&T")
>
>          …
>
> "… Plaintiffs stipulate, represent and warrant that (1) their claims and damages against BB&T in the action styled *Katherine M. Rudd et al., v. Branch Banking and Trust Company*, Case No. 2:13-cv-02016-JEO, in the United States District Court for the Northern Division of Alabama, arise solely from BB&T's alleged acts and omissions as trustees of the Shares Trust and 1989 Trust, which included an

obligation to administer and manage the trusts, as well as an obligation to review the prior trust activities and take reasonable steps to redress breaches of trust and recover trust assets, if any, which had been improperly distributed, invaded, or mismanaged by any co-trustee or custodian…"

(Doc. 169, Ex. N)(emphasis added).

Employing traditional principles of contract law, the parties' intent in the Settlement Agreement was clear.  There was no intention for the Settlement Agreement to operate as a final adjudication of any particular issue or to bar any claims against BB&T.  Rather, the parties agreed to settle and dismiss all claims brought, or which could have been brought, against Arlington.  Moreover, the release provision "reserves and preserves all claims against parties other than the Released Parties, including … Branch Banking & Trust Company." *Id.* Ex. N   Based on such language, it is axiomatic that there was no judicial decision on the merits for collateral estoppel to apply. *Tampa Bay Water v. HDR Engineering, Inc.,* 731 F.3d 1171, 1182, n.8 (11th Cir. 2013); Restatement (Second) of Judgments § 27 cmt. e (1982).

Contrary to the terms and intent of the Settlement Agreement, the district court erroneously concluded that "[t]he state court record makes

clear the parties did not settle the plaintiffs' claim Arlington breached fiduciary duties in relation to the Shares Trust or stipulate to the dismissal of that claim" (Doc. 204, p.39), yet that is precisely what the Settlement Agreement accomplished and intended by stating:

> "Plaintiffs, on a pro tanto basis only, <u>release</u>, remise and forever discharge <u>Arlington</u> … from <u>any and all claims</u> and damages of every kind and nature which Plaintiffs have or ever had, known or unknown ,,, .including but not limited to <u>any and all claims</u> relating to the events in the Lawsuit…and <u>any and all claims concerning or relating in any way to the Grandchildren's Trust, the Share I Trust, the Share II Trust</u> … Id.

(Doc. 169, Ex. N)(emphasis added) Nonetheless, the district court incorrectly reasoned that "Judge Vance granted summary judgment in Arlington's favor on the [Shares Trust] claim and then dismissed the claim Arlington breached fiduciary duties in relation to the Grandchildren's Trust pursuant to the parties' stipulation following settlement." (Doc. 204 at 39)    Such reasoning is not supported by the state court record as it contravenes the parties' Settlement Agreement and Joint Stipulation, both of which unequivocally reflect that the parties settled and discharged Arlington from any and <u>all</u> claims.

53

Finally, the terms of the parties' settlement agreement were not limited to claims relating to the Grandchildren's Trust as the settlement document repeatedly and unambiguously references a release of "any and all claims," including those "concerning or relating in any way to the Grandchildren's Trust, the Share I Trust, the Share II Trust, …" (Doc. 169, Ex. N)(emphasis added) Because the parties' settlement agreement unambiguously stated that all claims against Arlington were settled and released by agreement, and expressly reserved all claims asserted against BB&T herein, the district court's finding that the issue of the Shares Trust's termination in April 2011 was fully adjudicated and embodied in a final judgment on the merits was error.

**C.     The District Court erred in concluding that Vance's finding that the Shares Trust terminated in April 2011 was "necessary" to the prior judgment where the parties had already settled and dismissed all such claims and the March 7, 2017 Order offered multiple grounds for granting partial summary judgment.**

The district court further erred in concluding that Judge Vance's prior interlocutory finding-- that the Shares Trust had terminated in April 2011 -- was "necessary" to the final judgment entered in the state

court action and represents another basis for reversing the district court's decision.

It is well settled that for preclusive effect, the issues adjudicated in the prior order must be "necessary" to the underlying judgment. For purposes of collateral estoppel, "[a] determination ranks as necessary or essential "only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825,835 (2009)(citing 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4421 at 543 (2d ed. 20002). On the other hand, "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." *See* Restatement (Second) of Judgments, § 27 cmt. h. Courts have stated that where the prior order was entered on multiple grounds, then none of the prior issues were "necessary" for the judgment. *See* Restatement (Second) of Judgment § 27 cmt i. "It is the general rule that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000)(emphasis added);

Restatement (Second) of Judgments, § 27 and cmt. h (1982)("[n]ecessarily determined" means "essential to the judgment;" "[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action … is not precluded").

Here, the district court erred in its conclusion that Judge Vance's interlocutory finding -- that the Shares Trust had terminated in 2011 -- was "necessary" for the entry of the judgment. This assessment is incorrect for several reasons. First, the Plaintiffs and Arlington had already resolved "all claims" between them, and filed a joint stipulated dismissal of such claims.  Consequently, the final order entered on December 31, 2018 was not predicated on any specific findings by Judge Vance. (*See* Doc. 179-6)

Moreover, Judge Vance's March 7, 2017 Order granting partial summary judgment in favor of Arlington is multifaceted, relying on several independent grounds. To enumerate, Judge Vance first determined that Arlington, serving as the custodian of the Shares Trust, owed no fiduciary duties to the Plaintiffs, thereby negating any breach of

56

fiduciary duty claims against Arlington. (Doc. 167-17). Second, Judge Vance found that the Plaintiffs' breach of fiduciary duty claims were time-barred as Arlington had ceased fiduciary functions in 2006, rending the claims time barred as of 2008. (*Id.*) Third, Judge Vance stated that the Shares Trust's termination in April 2011 rendered the Plaintiffs ineligible to serve as successor trustees for a non-existent trust. (*Id.*)

Given that each of these findings could independently support the entry of summary judgment, the final judgment was not reliant on any singular determination by Judge Vance. Thus, the state court's interlocutory finding regarding the termination of the Shares Trust in April 2011 was neither "necessary" nor essential for the entry of the final judgment. As such, it should not be accorded any preclusive effect, and warrants reversal of the district court's decision.

Notwithstanding the foregoing, the district court sought to overcome the "multiple ground" hurdle by declaring that the first two (2) grounds for Vance's entry of partial summary judgment were immaterial, and by elevating the third ground as "necessary," and concluding that the latter implicated the threshold issues of "standing" and the court's

"subject-matter jurisdiction." (Doc. 204 at 33) However, the district court's determination that the third ground involved an issue of "standing" implicating the court's subject-matter jurisdiction is unsupported by Judge Vance's order and contravenes Alabama law. First, Judge Vance's Order makes no mention of standing or the court's subject-matter jurisdiction over such a claim. Second, the district court's lack of subject-matter jurisdiction reasoning runs afoul of Alabama law. Specifically, the Alabama Supreme Court has repeatedly stated that the concept of "standing," as it affects subject-matter jurisdiction, is only implicated in <u>public-law cases</u>, not private-law actions. See *Ex parte Endo Health Sols. Inc.*, 354 So.3d 488, 493-94 (Ala. 2021); *Ex parte BAC Home Loan Servicing, LP*, 159 So.3d 31, 44 (Ala. 2013) ("The concept [of standing] appears to have no necessary role to play in respect to private-law claims"); *Ex parte Skelton*, 275 So.3d 144, 151 (Ala. 2018)("[t]he doctrine of standing (particularly as a jurisdictional concept) has no application in this private-law case") The Alabama Supreme Court has repeatedly clarified that the term standing has often been misused by courts when dismissal is proper not on grounds of "standing" but rather

58

based on a failure to state a claim, which does not implicate the court's subject matter jurisdiction. *See Norvell v. Norvell*, 275 So.3d 497 (Ala. 2018) (Court reaffirmed its analysis in *Ex parte BAC Home Loan Servicing LP*, wherein it held that the word "standing" has been erroneously equated with real party in interest or failure to state a claim, and does not implicate the subject matter jurisdiction of the trial court.) In *Wyeth, Inc. v. Blue Cross and Blue Shield of Alabama*, 42 So.3d 1216 (Ala. 2010), the Court observed that "our courts have too often fallen into the trap of treating as an issue of 'standing' that which is merely a failure to state a cognizable cause of action or legal theory, or failure to satisfy the injury element of a cause of action." *Id*.

Judge Vance's finding that the Shares Trust had terminated in April 2011 neither held nor inferred that Plaintiffs lacked standing to assert a claim, but rather that Plaintiffs failed to state a cognizable claim for relief. As set forth under well-established Alabama law, a failure to state a claim for relief does not implicate standing or the court's subject matter jurisdiction. Therefore, Judge Vance's alternate finding that the

Shares Trust terminated in 2011 did not take priority over the other grounds stated in the March 7, 2017 Order.

In short, the parties' settlement and stipulated dismissal of all claims rendered the interlocutory finding regarding the termination of the Shares Trust to be unnecessary. Furthermore, the multiple grounds provided in Judge Vance's March 7, 2017 Order for entering partial summary judgment in favor of Arlington rendered each alternate finding or independent ground not "necessary" to the ultimate determination of Plaintiffs' claim against Arlington and therefore the district court's finding otherwise was error.

## II. <u>The District Court erred in finding that the statute of limitations was not tolled with respect to Shares Trust.</u>

The district court further erred in concluding that the two-year statute of limitations barred Plaintiffs' claims. Specifically, in concluding that the Shares Trust had terminated in April 2011, in accordance with Judge Vance's interlocutory finding, the district court held that the applicable limitations period began to run at that time and expired in April 2013 and therefore barred Plaintiffs' claims brought in September 2013. Plaintiffs submit that even if the Shares Trust had terminated as

60

of April 2011, the statute of limitations on Plaintiffs' claims with respect to the Shares Trusts was tolled by BB&T and the predecessor trustees' concealment of material facts and information from Plaintiffs, as amply reflected in the record and previously determined in Judge Ott's August 8, 2016 Order. (Doc. 46 at 45-46)

The record herein presents the rare occasion where all parties acknowledge that Plaintiffs were provided no information and lacked any knowledge of material facts regarding the Shares Trust or 1989 Trust to protect their interests. Further, Judge Ott had previously considered and rejected BB&T's statute of limitations defense, concluding that the statute of limitations was tolled with respect to Plaintiffs' claims concerning the Shares Trust. (*Id.*) Judge Ott also considered, and largely rejected, BB&T's contention that the Shares Trust had terminated in April 2011 so as to start the running of the applicable limitation period. [18] Nonetheless, the district court refused to adhere to Judge Ott's prior

---

[18] Judge Ott's October 11, 2018 Order (Doc. 90) provided a thorough analysis largely rejecting BB&T's contention that Vance's finding that the Shares Trust had terminated in 2011 precluded Plaintiffs' claims. Judge Ott noted that he was not bound by an interlocutory order from the circuit court and further disagreed that all trust assets were

61

findings on this issue and concluded that the statute of limitations was not tolled with respect to the Shares Trust without referencing any new information which would warrant a reversal of this finding.

The record reflects that Judge Ott's 2014 and 2016 Orders expressly held that Plaintiffs' pleadings had alleged sufficient detail relating to BB&T's concealment such that the statute of limitations was tolled as Plaintiffs were unaware of the existence of the trusts and their interests in them. (Doc. 46 at 45-46)("[…] the court again concludes that Plaintiffs have pled sufficient detail as it relates to claims based on their theory that BB&T engaged in fraudulent suppression or concealment that constituted a breach of its fiduciary duty and tolled the statute of

_____

distributed out of the Shares Trusts in April 2011, as the Trusts' most valuable asset at that time was a cause of action. *Id.* at 26.  Finally, he also noted that the trustees had the power to prosecute claims during the winding up of the trust following termination.  Judge Ott also reasoned that even if the Shares Trusts had terminated in 2011, the former beneficiaries of the Shares Trust (i.e., Grandchildrens' Trust) would nonetheless have standing to bring such claims, noting that Plaintiffs were trustees of the GCT and therefore could bring such claims on behalf of the GCT ("… such property interests do not "dissipate into the ether when the trusts ceased," but rather such rights passed to the beneficiaries. *Id*. at p. 30.

limitations on Plaintiffs' claims for other, non fraud-based breaches of fiduciary duty.")    Plaintiffs' lack of knowledge stemmed from the undisputed failure of any trustee or custodian to conduct annual audits and distribute them to Plaintiffs, who were beneficiaries over the age 18, as mandated by the Trust instruments. (*See* Doc. 46 at 45-46) The record unequivocally reflected that no trustee (Wells Fargo, Colonial, Joy Adams or BB&T) or custodian (Arlington) informed Plaintiffs of the existence of the Shares Trust (or 1989 Trust) or their remainder interests therein. It is further undisputed that annual audits were not conducted and distributed to "all beneficiaries over the age of 18" as required by the Trust instruments. (Brown Dep., Doc. 179-41 at 113-114; Elliotte Dep., Doc. 179-31 at 68)

Notwithstanding the foregoing, the district court held that the statute of limitations was not tolled **"[b]ecause Plaintiffs have not identified a duty of disclosure owed to them, nothing was fraudulently concealed from them, and there is no basis for tolling the statute of limitations**." (Doc. 204 at 44-45) This conclusion not only contradicts Judge Ott's prior determination but, more

importantly, fails to give effect to the express terms of the Shares Trust instrument which required notice to Plaintiffs pursuant to annual audits which were to be distributed to <u>every beneficiary over 18 years</u>. (See Doc. 179-1 at 11-12, Shares Trust, Article 5C) This annual audit provision clearly imposed a duty of disclosure on BB&T, as well as the predecessor trustees, to inform Plaintiffs regarding the Trusts' administration and transactions and, therefore, the district court's finding that Plaintiffs had no right to any information regarding the Shares Trusts was error. (*Id.*)

Notwithstanding Judge Ott's determination that Plaintiffs pled sufficient facts to warrant tolling of the statute of limitations (Doc. 46 at 45-46), the district court relies on an August 1, 2013 finding in the state court action on Wells Fargo's motion to dismiss which held that the statute of limitations barred Plaintiffs' claims against Wells Fargo and that such claims were not tolled as Plaintiffs' Complaint "fails to allege any efforts by Wells Fargo to conceal from them fact that would have enabled them to recognize their legal injury and available causes of action against it." However, such a finding was based exclusively on those facts which were alleged in the state court complaint, which are not the

64

same as those alleged in Plaintiffs' federal court complaint and which govern this action. Further, Judge Vance's August 1, 2013 Order did not address the Shares Trust's annual audit provision which required notice to Plaintiffs, but rather focused on the fact that Plaintiffs held remainder interests and concluded that "Wells Fargo held no reporting obligation to these plaintiffs (because they had no current ownership interest), and that any reporting obligations were owed to the current income beneficiary of those trusts; namely Joy Adams." (*Id.*) Finally, as noted above, BB&T failed to plead collateral estoppel as an affirmative defense in its answer and therefore such a defense was waived.

Because the Shares Trust's annual audit provision unequivocally imposed on the trustee a duty of disclosure to provide Plaintiffs, as trust beneficiaries over the age of 18, with information regarding the administration of the Trust, the district court's finding that no duty of disclosure was owed to Plaintiffs and therefore no basis to toll the statute of limitations was error.

## III.    **The District Court erred by misconstruing Judge Ott's Order and limiting the scope of claims remaining with respect to the 1989 Trust.**

The district court also erred in granting summary judgment with respect to Plaintiffs' claims by unduly limiting the scope of Plaintiffs' remaining claims concerning the 1989 Trust.  Specifically, despite its repeated reliance on Judge Ott's August 8, 2016 Order, which delineated the contours of Plaintiffs' remaining claims after ruling on BB&T's motion to dismiss, the district court unduly circumscribed the scope of such remaining claims.    The district court erroneously held that Plaintiffs' claims regarding the <u>trustees'</u> failure to perform required annual audits and provide Plaintiffs with annual accounting reports was limited <u>to BB&T's failure</u> <u>to perform and provide such audit reports from 2009 forward</u>.  However, the language employed in the August 8, 2016 Order clearly evidences an intent to allow claims based on acts and/or omissions of the predecessor trustees.  Specifically, Judge Ott's Order recognizes the viability of claims "based on the alleged failure of the **<u>trustees</u>**" – not merely BB&T – "to conduct required annual audits," which would have informed Plaintiffs of the Trusts' administration,

distributions and transactions which pre-dated BB&T's service, and on BB&T's failure to redress and recover damages arising from the predecessor trustees' breaches of trust occurring prior to 2009. As a result, the district court erroneously concluded that because the 1989 Trust held assets of less than $200, and an interest in Goodwin Capital Partners as of August 2009 when BB&T became the successor trustee, Plaintiffs could not prove that any damages were suffered after 2009.[19] This finding contravenes Judge Ott's express determination that Plaintiffs had a right to proceed against BB&T based on transactions occurring prior to 2009 <u>caused by the predecessor trustees' failure to conduct and distribute annual audits to Plaintiffs</u>, which BB&T refused to redress.

The district court's flawed reasoning is evidenced by the language employed in the August 8, 2016 Order (Doc. 46)(Judge Ott expressly

---

[19] The district court concluded that the annual audits would not have prevented any damages as "the damage had already been done." (Doc. 204 at 49, n. 45: "the money already was gone – long gone – by 2009"); (p.49: "notices and reports to the plaintiffs in 2009 and subsequent years would not have prevented the diminution in value of the trust."); (p.50, n.47: "But it is not clear what an audit conducted in 2009 or later would have revealed about the trust.")

67

stated that Plaintiffs remaining claims included, *inter alia*, "claims based upon the alleged failure [of] <u>the trustees</u> of the Shares Trust and 1989 Trust to conduct required annual audits of those Trusts and to provide Plaintiffs as beneficiaries with annual accounting reports.") (*Id.* at 51) (emphasis added).  Further, the district court's reasoning is contradicted by Judge Ott's express determination that Plaintiffs had viable claims based on BB&T's own failure to redress breaches of trust by predecessor trustees Wells Fargo, Joy Adams, and custodian Arlington.  To this end, BB&T's motion to dismiss was denied to the extent it sought dismissal of all claims pertaining to BB&T's failure to redress breaches of trust by a former trustee "<u>that would have occurred prior to August 14, 2009</u>."  (See Doc. 46 at 43) (emphasis added) As a result, Judge Ott clearly intended to permit Plaintiffs to pursue claims arising from BB&T's failure to recover trust property and/or redress breaches of trust <u>by Wells Fargo, Joy and/or Arlington occurring prior to 2009</u>.[20]

---

[20] Accordingly, Plaintiffs' claim that BB&T owed a duty to redress Wells Fargo's distribution of the proceeds from the sale of the 1989 Trust's largest asset (Fort Walton Square Shopping Center for $8 million) still remained viable.

Notwithstanding the determinations set forth in the August 8, 2016 Order, the district court erroneously concluded that any claim related to the trustees' failure to perform and distribute the annual audits to Plaintiffs was meritless. Specifically, the district court stated that Plaintiffs could not demonstrate that they suffered any damages as BB&T's failure to perform annual audits <u>after 2009</u> would not have yielded any useful information to Plaintiffs as virtually all of the 1989 Trust assets had been distributed out and spent long before 2009 when BB&T became the corporate trustee. (Doc. 204 at 49, 50) This finding fails to give effect to Judge Ott's express determination that BB&T remained potentially liable for its own failure to redress breaches of trust <u>by the predecessor trustees or custodian occurring prior to 2009</u>. (Doc. 46 at 43-44, 47) Had Judge Ott only intended to allow claims concerning BB&T's own failure to conduct annual audits from 2009 forward, he would have so stated in his Order.

Because Plaintiffs did not receive annual audit reports as mandated by the 1989 Trust instrument -- which would have informed Plaintiffs that Wells Fargo and Joy Adams had distributed most of the

1989 Trust's assets to Joy -- breaches of trust occurring prior to and after 2009 remained unknown to Plaintiffs, were proximately related to the trustees' (i.e., Wells Fargo, BB&T, and/or Arlington) failure to conduct and distribute annual audits, and resulted in damages. As a result, consistent with Judge Ott's determination, such breaches of duty and resulting damages stemming from the trustees' failure to conduct and distribute annual audits prior to 2009 remained viable and the district court's finding otherwise was error and is due to be reversed.

## <u>CONCLUSION</u>

Based upon the errors set forth above, the District Court's decision granting summary judgment for BB&T should be reversed and the case remanded for trial.

Respectfully submitted,

*/s/ John Parker Yates*
JOHN PARKER YATES

*/s/ Kristopher O. Anderson*
KRISTOPHER O. ANDERSON

YATES ANDERSON LLC
2320 Highland Ave., S, Suite 290B
Birmingham, AL 35205
Telephone (205) 705-3144
E-mail: parker@yatesanderson.com
E-mail: kris@yatesanderson.com

*/s/ Jeffrey P. Mauro*
JEFFREY P. MAURO

JEFFREY P. MAURO, LLC
2100-B SouthBridge Parkway
Suite 380
Birmingham, AL 35209
(205) 994-6384
jpm@jeffmaurollc.com

*Attorneys for Appellants*

71

## **CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the font and word limitations set forth in the Alabama Rules of Appellate Procedure. The text in this document is Century Schoolbook, font 14. The text contains 12,999 words.

*/s/ John Parker Yates*
JOHN PARKER YATES

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that copies of the foregoing have been furnished electronically on this 23rd day of October 2023 to the following:

Larry B. Childs, Esq.
Holland & Knight, LLP
1901 Sixth Avenue
North, Suite 1400
Birmingham, AL 35203
*Attorneys for Appellee*
larry.childs@hklaw.com

*/s/ John Parker Yates*
JOHN PARKER YATES